Alfred **FRANKE** and Theodore R. P. Martin, Appellants,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Respondent.**

No. 55533.

Supreme Court of Missouri, Division No. 1.

April 10, 1972.

Motion for Rehearing or to Transfer to Court en Banc Denied May 8, 1972.

A. Wimmer Carr, Donald W. Paule, Tremayne, Lay & Carr, Clayton, for appellants.

C. Kenneth Thies, Kerth, Thies, Schreiber, Hamel & Dee, Clayton, William C. Sullivan, W. Kenneth Lindhorst, St. Louis, for respondent.

HIGGINS, Commissioner.

Action by plaintiffs for $50,000 actual and $100,000 punitive damages for trespass to real estate, alleged to have occurred through use and occupancy of plaintiffs' land by defendant in maintaining an underground concrete conduit containing wires and cables through plaintiffs' land. Defendant denied the trespass and damages, claimed an easement across plaintiffs' land for purpose of maintaining its conduit, and prayed the dismissal of plaintiffs' action. Jury-waived trial resulted in a judgment which denied plaintiffs' claims for damages and granted defendant "a franchise or property right with respect to its facilities and conduit as situated in the subject parcel, which right was subject only to the limited supervisory powers accorded the State Highway Commission under the laws of Missouri." (Section 227.240, V.A.M.S.)

Appellants contend the court erred in its judgment because defendant had only a license under Section 227.240; that such license could not ripen into the "franchise or property right" awarded defendant; that

upon failure of defendant to move from plaintiffs' land upon revocation of the license by plaintiffs, defendant became a trespasser and, accordingly, the court should have assessed damages to plaintiffs for the trespass and taking of the "property right" across plaintiffs' land.

Respondent supports the court's judgment contending that its rights to maintain its conduit across plaintiffs' land was superior to plaintiffs' title to the land; that the court properly recognized that defendant had a statutory easement across plaintiffs' property which could not be revoked by plaintiffs; and, further, that plaintiffs are barred and estopped by their failure to inform themselves at the time of their purchase of the land in question about "utilities now in place" as recited in the quitclaim deed by which plaintiffs acquired their title.

Subject land is a tract of 330 front feet, 369 rear feet, and depths of 84 feet on the west and 93 feet on the east, at the intersection of Natural Bridge Road and Whitfield Lane, south of Interstate 70, immediately west of Hilton Inn and east of Lambert St. Louis Airport in St. Louis County, Missouri. Plaintiffs, as highest bidders at auction, purchased the tract from the Missouri Highway Commission at an excess property sale September 10, 1963. The sale was conducted pursuant to Section 227.290, V.A.M.S., which authorizes the Commission, whenever in its opinion the advantageous use of any interest in any land acquired by it has ceased, to convey the same by deed for the best available cash price. The auction sale notice described the subject tract along with 78 other tracts, and stated terms and conditions, including method of payment, necessity of approval of sale by the Commission, conveyance by quitclaim deed, and all sales "as is, where is."

Plaintiffs examined the property on the date of sale and found it covered with weeds up to three feet in height with a drainage ditch on the rear. They did not see Southwestern Bell manholes on the land. Immediately prior to the sale, representatives of the Highway Commission exhibited a plat of the tract made from plans kept by the Commission. The plat, examined by plaintiffs, did not show any underground conduit through the tract, and no mention was made of any such encumbrance when the auction commenced.

Plaintiffs were the successful bidders for the tract, paid the down payment of 10 per cent of the purchase price, and ultimately paid the total price of $32,428.59.

Immediately following their purchase of the tract, plaintiffs ordered a survey to determine limits of the land and existence and location of easements, if any. The survey showed an easement in Union Electric Company which was later determined to have been abandoned and its release of record was procured.

Plaintiffs' next step in perfection of their title was to order a title certificate and insurance policy from Security Title Company. They also arranged to close the deal by depositing the balance of the purchase price with Security Title with instructions to pay it over to the Highway Commission when the quitclaim deed was tendered and Security was prepared to issue a title policy showing the land free and clear of all encumbrances, particularly as to easements. Unless the title was so certified, plaintiffs were prepared to forfeit their 10 per cent down payment and not close the sale. Plaintiffs received Security's commitment to insure and a title insurance policy in Kansas City Title Company issued by Security as agent. Neither document showed any encumbrance by way of easements, or for telephone conduit across the tract.

Accordingly, the sale was closed and Security transmitted the Commission's quitclaim deed of April 9, 1964, to plaintiffs' straw party, Maxine Gay. The straw subsequently conveyed the land to plaintiffs by deed of December 30, 1964, recorded January 14, 1965. The Commission's deed contained a recital, "Subject to existing utility

easements of record, if any. Also subject to utilities now in place."

On January 14, 1965, plaintiffs were called by their contractor who advised that in the course of an excavation on the land a telephone conduit had been uncovered. Plaintiffs went to Bell's office to inquire about the conduit and were advised that Bell claimed an easement for the conduit. Plaintiffs requested they be shown a copy of the easement but none was produced. A subsequent similar request by plaintiffs' counsel also was refused. Bell further refused to discuss the matter and claimed an absolute right to be on plaintiffs' property. No evidence of Bell's claim was produced, and plaintiffs proceeded with this action.

Prior to 1958, Bell had used and maintained telephone cables and appurtenances within the north side of the right of way of Natural Bridge Road. When plans were developed for construction of Mark Twain Expressway (Interstate 70), the Highway Commission determined that Bell's facilities should be moved and relocated in the south side of the right of way. Accordingly, in the summer of 1958 the Commission, pursuant to Section 227.240, V.A.M.S., ordered Bell to move its facilities to the south side of the highway right of way. Pursuant to such order, Bell filed "Application to Locate Facilities Within the State Highway." After the required public notice and hearing, the Commission, by letter of September 5, 1958, granted Bell "permission" to construct proposed conduit and manholes along designated portions of the right of way; and by letter of September 9, 1958, the Commission transmitted its formal "permit" for construction of underground conduit and manholes "On South side of Outer Roadway from Woodson Road (Route EE) West to Edmundson Road, then North across FAI-1 [the highway] to existing facilities * * *." The permit was further subject to Bell's agreement to promptly move, at applicant's expense, "such part or all of said facility as the Commission may order, to such new location in the right-of-way as the Commission may designate, it

being understood and agreed that the location of state highway right-of-way and of all facilities, as well as all highway construction and maintenance within the right-of-way, are always subject to change and orders by the Commission."

Bell installed the conduit and manholes in question in the fall of 1958, and, in agreement with Commission's district engineer, installed the facilities in a manner to accommodate a 20-inch water main and an 8-inch gas main, neither of which is in issue in this action. The installation, in traversing its permitted route, crossed the land comprising the tract purchased by plaintiffs which was part of the right of way prior to the auction sale. The installation consisted of a 9-duct tile conduit with supporting cables and laterals, buried five to six feet, and manholes. The latter were covered by 27-inch manhole lids marked "Bell System," two of which were in subject tract. The conduit divides the property on a straight line about 25 feet from the front or north line until it reaches the eastern manhole where it angles northeast until it leaves subject tract. The eastern portion of the tract was thus more open and a car rental agency was built on the eastern one third of the tract without being affected by the conduit.

Plaintiffs adduced evidence of damages consisting of $250 per month since January, 1965, for trespass and loss of use of the western part of the tract, and damages for inverse condemnation averaging $37,500, and ranging from $25,000 to $75,000 depending upon the use that could be made of the land with the conduit running through it. Defendant's evidence on damages ranged between $12,000 and $17,000, based upon the difference between per square foot valuations as chosen by its appraisers.

Resolution of this appeal requires a determination of two principal questions: I. What right did defendant acquire from the Highway Commission with respect to the consent given it by the Commission to place its conduit and manholes in the highway

right of way? II. What right, if any, could defendant thereafter hold or assert against plaintiffs, when the Highway Commission sold to plaintiffs as excess property that portion of its right of way in which defendant had placed its conduit and manholes pursuant to consent given under Section 227.240?

The thrust of appellants' argument on these questions is that Bell acquired only a license for placement of its conduit in the highway right of way, and that such license could not extend any rights in subject property to the licensee beyond the licensor's control of the property.

The respondent argues that plaintiffs by the quitclaim deed acquired only such rights, title, and interests as the Commission had, subject to the restriction and reservations in the deed; and that the Commission had no power to extinguish defendant's right to maintain its conduit and manholes because "defendant's right was and is an irrevocable * * * interest" flowing from its "franchise" right under Section 392.080, V.A.M.S.

Under Section 392.080 Bell is "authorized," as are all telephone and telegraph companies, to set utility fixtures "along, across or under any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters; provided * * * they shall first obtain consent" from the proper officials. When such a company wishes to locate its fixtures in a highway under the jurisdiction of the State Highway Commission, such consent must be obtained from the Highway Commission pursuant to Section 227.240, which provides that the location and removal of all such fixtures "erected or constructed, or hereafter to be erected or constructed * * within the right of way of any state highway, * * * shall be under the control and supervision of the state highway commission."

Neither of these sections accords Bell any right to use and occupy private property without consent of the owner unless it resorts to condemnation proceedings authorized for that purpose by Chapter 523, V.A.M.S. Nor can Sections 392.080 and 227.240 serve as the source of an "easement." Authority acquired by Bell under Sections 392.080 and 227.240, with respect to use of a highway right of way, has been defined previously: "* * * the effect of authorizing a particular location is to give the company what amounts to a license to use that location for its * * * line; and that to order a relocation is in effect the revocation or at least modification of that license. * * * such a license or permission to use a particular location on the right of way is a privilege and not a right, even under the provisions of Sec. 227.240." State ex rel. State Highway Comm. v. Weinstein, Mo., 322 S.W.2d 778–783[2–4] ; State ex inf. McKittrick v. Southwestern Bell Tel. Co., 338 Mo. 617, 92 S.W.2d 612. As a consequence, and as recognized by respondent, Bell's asserted "statutory right" was but a privilege "to maintain its facilities *somewhere* on the right-of-way in a manner so as to not incommode the public use of the roadway."

The answer to question I, then, is that Bell acquired only a license from the Highway Commission to place its conduit and manholes on subject property when it was a part of the right of way and then under control and supervision of the Commission.

Since Bell had only a license from the Highway Commission to use land under control of the Commission, it follows that Bell could have no right by virtue of such license after the Commission's relinquishment and deed of its right, title, and interest (and control) to plaintiffs. The situation is akin to that in State ex rel. State Highway Comm. v. Union Electric Co., 347 Mo. 690, 148 S.W.2d 503. Union Electric was permitted to place its lines in right of way acquired through condemnation by St. Louis Public Service Company. The right of way

was later abandoned and title to it returned to the abutting owners.[1] Thereafter the Highway Commission condemned the abandoned right of way as a right of way for highway purposes. Union Electric claimed an entitlement to the condemnation award contending that it had acquired an easement in the premises by either the original permit to place its lines on the tract or by prescription. The court denied the claim of Union Electric, holding that "Since the railroad company had only an easement interest in the land it had no right to grant an additional easement burden * * * beyond the period of use by the railroad for right of way purposes." 148 S.W.2d 1. c. 506 [6]. Similarly, the judgment according Bell rights in plaintiffs' property cannot stand because it may not be said that Bell received a right from the Highway Commission which outlives the use of the property by the Commission as highway right of way. Bell's status in these circumstances is well described in Nelson v. American Tel. & Tel., 270 Mass. 471, 170 N.E. 416, 420: "The defendant at all times must be held to have known that the instrument under which it was permitted to occupy and use the locus was a mere license which was revocable and gave it no estate or interest in the land. It was also bound to know when it entered upon and used the locus that the license was revocable not only at the will of the owner of the property on which it is to be exercised but by his death, by alienation or demise of the land by him, and by whatever would deprive the original owner of the right to do the acts in question or give permission to others to do them."

Respondent cites a number of cases, In re Gillen Place, 304 N.Y. 215, 106 N.E.2d 897; Arkansas State Highway Comm. v. Arkansas Power & Light Co., 231 Ark. 307, 330 S.W.2d 77; Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389; State ex rel. National Subway Co. v. City of St. Louis, 145 Mo. 551, 46 S.W. 981; State ex rel. Hagerman v. St. Louis & E. St. L. Electric Ry.

Co., 279 Mo. 616, 216 S.W. 763; State ex rel. Shaver v. Iowa Telephone Co., 175 Iowa 607, 154 N.W. 678, on its premise that it acquired a "franchise" right, which, upon acceptance by installation of fixtures, became, in some way, irrevocable and not subject to ouster by the Highway Commission. The difficulty with respondent's argument and citations is that they relate only to whether Bell as a utility can be denied or removed from use of highway right of way by the highway authority. The cases do hold that the utility may not be so denied by the highway commission; but they have nothing to do with the rights of a private property owner as against a utility that would occupy private property without consent of, or compensation to, the private landowner.

Another of Bell's arguments is that to permit plaintiffs' position to prevail is to permit plaintiffs to oust Bell from a highway right of way. Such is not the result of plaintiffs' position because their position would require simply that Bell be ordered to move from, or pay for, its occupancy of plaintiffs' private property. If Bell chooses to remain on plaintiffs' property, it must secure plaintiffs' consent or respond in proper damages; if Bell wishes alternatively to relocate on the highway right of way, it has the authority to do so under Section 392.080, subject to supervision and control of its location by the Highway Commission under Section 227.240. If the latter alternative is chosen by Bell, plaintiffs' damages would be limited to damages for trespass from the commencement of the trespass to time of removal.

The answer to question II, then, is that the consent or license to use the right of way given Bell by the Highway Commission did not extend beyond the Commission's occupancy of the right of way and could give Bell no right in such land after title passed to plaintiffs. As a consequence, Bell became a trespasser upon plaintiffs' land from the date of plaintiffs' demand for Bell to move or pay.

---

1. There is no issue of abutter's rights in this case.

Yet another argument by Bell in support of the judgment in its favor is made by emphasizing the words "subject to utilities now in place," in the quitclaim deed and the existence of its manholes on subject property. The argument is that plaintiffs were thus put on inquiry, and by failing to be excited by such language and the existence of a utility in place, they are barred and estopped from recovery.

Since, as previously demonstrated, Bell held no right in subject property beyond its control by the Highway Commission, the emphasized words and the physical presence of manholes, given their fullest import, have no bearing on plaintiffs' rights. The words "utilities in place" and their visual obviousness, if so, did not breathe more life into the license than it had at the time the land on which it was exercised was conveyed. As previously recognized, the Highway Commission, by its quitclaim deed, relinquished all its right, title and interest in subject property, including its authority to license or permit Bell to use subject land when it was highway right of way as opposed to private property. In short, plaintiffs are not subject to an estoppel by a nonexistent right. Langenberg v. City of St. Louis, 355 Mo. 634, 197 S.W.2d 621, cited by respondent, is not in point because it held only that damage by virtue of a wrongful appropriation was entire at the time of appropriation and the claim for damages for such was not transmitted to a subsequent grantee. Respondent also cites Gibson v. Sharp, Mo.App., 277 S.W.2d 672; Fuhr v. Dean, 26 Mo. 116; Lewis v. Kaplan, Mo.App., 5 S.W.2d 699; Wilson v. Owen, Mo., 261 S.W.2d 19; Missouri Power & Light Co. v. Thomas, 340 Mo. 1022, 102 S.W.2d 564, and Grandstaff v. Bland, 166 Mo.App. 41, 148 S.W. 139, dealing with situations in which licenses were held irrevocable when coupled with certain interests and supported by valuable consideration. They, too, are not in point because Bell paid nothing to the Highway Commission for its license to locate its facility in the highway right of way; and, accordingly, the right acquired by Bell was never any-thing more than the license previously demonstrated.

Appellants urge that in the event the issues of this appeal are determined in their favor, the court should not only reverse the judgment but should also enter judgment for plaintiffs' damages. This invitation is declined for two reasons: Obviously, the trial court never reached the issue of damages and should be given the opportunity to make findings and enter its judgment on that issue; and, under this decision, there are alternatives yet open to defendant which bear upon the type and amount of damages, if any, to be awarded.

For the reasons indicated, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

WELBORN, C., concurs.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.