PLANNED INDUSTRIAL EXPANSION AUTHORITY OF the CITY OF ST. LOUIS et al., Respondents,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,

v.

The CITY OF ST. LOUIS, MISSOURI, Respondent.

No. 61897.

Supreme Court of Missouri, En Banc.

March 9, 1981.

Thad Hollie, Jr., St. Louis, for appellant.

Irvin Dagen, St. Louis, for respondents.

Robert C. McNicholas, St. Louis, for third party-defendant.

MORGAN, Justice.

The trial court entered what it designated as a Partial Summary Judgment wherein it declared that § 392.080, RSMo (as amended by Laws 1974, p. 892, § 1), was unconstitutional and ordered that said judgment be considered final for purposes of appeal; and, all parties agree that our present review is limited to those constitutional questions flowing therefrom.

The suit itself involves a dispute among the parties[1] as to the ownership of portions of certain streets and alleys within the City.

Prior to the month of June 1978, PIE and LCRA developed a plan whereby several blocks in the City were to be razed and redeveloped under a project known as the DeSoto-Carr Urban Renewal Program. In support and furtherance thereof, the City passed three ordinances purporting to convey to PIE the following described real estate:

All the property in City Blocks 543, 544 and 545 in the City of St. Louis, including

---

1. Southwestern Bell Telephone Company, herein referred to as Bell, is a corporation organized and existing under §§ 392.010–392.170, RSMo 1978, for the purpose of constructing, owning, operating, and maintaining lines of telephone and telegraph.

Planned Industrial Expansion Authority, herein referred to as PIE, is a municipal and governmental corporation created under §§ 100.300–100.620 of the "Planned Industrial Expansion" law.

Land Clearance For Redevelopment Authority, herein referred to as LCRA, exists pursuant to §§ 99.300–99.715 of the "Land Clearance For Redevelopment Law."

St. Louis, herein referred to as the City, is a constitutional charter city existing under the laws of this state.

vacated portions of Seventeenth Street, between Cole Street and Dr. Martin Luther King Drive, and the east/west alleys in City Blocks 543, 544 and 545.

Bell, perhaps as early as 1897, had laid underground cables and conduits beneath some or all of the streets and alleys described in the vacating ordinances; which, as presently constructed and used, allegedly constitute a major feeder run of Bell's Chestnut Central Office at 1010 Pine Street.

PIE requested Bell to remove said facilities. Claiming a "real property public easement" in said lands under § 392.080 (as amended in 1974), Bell refused to relocate the same absent an agreement by PIE to reimburse Bell for all costs incurred. Thereafter, it was agreed that PIE would seek a declaratory judgment to resolve the dispute and advance any relocation costs upon condition that Bell would refund such payments in the event PIE obtained a favorable judgment. In an interlocutory memorandum opinion, the trial court (Judge Godfrey presiding) declared that PIE was vested with clear and unencumbered title to the "vacated land" and that § 392.080 was unconstitutional insofar as it purported to create a *vested* property interest in Bell without due process of law, but nevertheless did grant Bell leave to file a third party action against the City.

Bell did file its third-party petition against the City seeking a declaration that Bell indeed was possessed of a "real property public easement" in said streets and alleys and that the vacating ordinances were void. By counterclaim, the City sought a declaration that § 392.080 was unconstitutional in the following respects: (1) the statute is an *ex post facto* law violative of Art. I, § 13, Mo.Const.; (2) the statute violates the due process clause of Art. I, § 10, Mo.Const., as it affects a taking of private property without just compensation; (3) the 1974 amendment adding the "real property public easement" language rendered the whole section violative of Art. III, § 23, Mo.Const., because it contains more than one subject. Upon motion of the City, the trial court (Judge Geary presiding) entered what was designated as a partial summary judgment in favor of the City by accepting all of its constitutional challenges to the statute; and, as authorized, made that judgment final for purposes of appeal.

■ Based upon the record presented, and viewed in the light most favorable to Bell, we must determine if the trial court properly found that there was no genuine issue of fact to be resolved. *Scott v. Thornton,* 484 S.W.2d 312[1] (Mo.1972); *E. O. Dorsch Electric Co. v. Plaza Construction Co.,* 413 S.W.2d 167[2] (Mo.1967). The ultimate question thus becomes whether the trial court correctly concluded that § 392.-080 could not withstand the City's constitutional attacks; and resolution thereof must be made with an awareness of the long established rule that statutory enactments are accorded a presumption of validity. *Prokopf v. Whaley,* 592 S.W.2d 819[7] (Mo. banc 1980); *McKay Buick, Inc. v. Love,* 569 S.W.2d 740[1] (Mo. banc 1978).

The statute in question reads as follows:

Companies organized under the provisions of sections 392.010 to 392.170, for the purpose of constructing and maintaining telephone or magnetic telegraph lines are authorized to set their poles, piers, abutments, wires, and other fixtures along, across or under any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters; provided, any telegraph or telephone company desiring to place their wires, poles, and other fixtures in any city, they shall first obtain consent from said city through the municipal authorities thereof;

(The 1974 amendment added the following language:)

and provided, further, that the acceptance, use, or continued use of this right shall create a real property public easement in the public roads, streets and waters in favor of the accepting telephone or magnetic telegraph company so long as it is used for public utility purposes, subject only to public use and the

rights of the cities as set out above, and such easement shall not terminate or be extinguished by any vacation, abandonment or subsequent sale by the state or any agency or commission thereof; however, nothing contained herein shall alter the authority of the state highway commission to require the alteration or removal of such facilities pursuant to section 227.240, RSMo, nor entitle the owner of the facilities to reimbursement for the cost of altering or removing such facilities pursuant to an order of state highway commission under section 227.240, RSMo.

We first consider the trial court's decision that said section contravenes the proscription against *ex post facto* laws found in § 13 of Article I of the Missouri Constitution, which provides: "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted."

In *Dye v. School Dist. No. 32*, 355 Mo. 231, 195 S.W.2d 874, 879 (1946), we said that:

A retrospective law is one that relates back to, and gives to a previous transaction, some different legal effect from that which it had under the law when it occurred. A statute is not retrospective merely because it relates to antecedent transactions, where it does not change their legal effect.

In *Willhite v. Rathburn*, 332 Mo. 1208, 61 S.W.2d 708, 711 (1933), it was said that:

The constitutional inhibition against laws retrospective in operation ... does not mean that no statute relating to past transactions can be constitutionally passed, but rather that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested. A law must not give to something already done a different effect from that which it had when it transpired.

More recently in *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974), we said:

Those rights which are substantive and which therefore cannot be applied retrospectively are regularly defined as those which 'take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already passed.' *Barbieri v. Morris*, 315 S.W.2d 711, 714 (Mo.1958)....

The City maintains before this Court, as it did before the trial court, that § 392.080 is retrospective in its operation because it purports to convert a "permissive use" of a public street easement into a "real property public easement." Reliance is placed primarily upon this Court's decision in *Franke v. Southwestern Bell Telephone Company*, 479 S.W.2d 472 (Mo.1972), wherein the question was whether or not Bell was possessed of an easement for its facilities in a public highway easement *after* the easement grantor dispossessed itself of all ownership rights in the effected lands. Therein, at 476–77[2–3], the Court said:

Since Bell had only a license from the Highway Commission to use land under control of the Commission, it follows that Bell could have no right by virtue of such license after the Commission's relinquishment and deed of its right, title, and interest (and control) to plaintiffs. The situation is akin to that in *State ex rel. State Highway Comm. v. Union Electric Co.*, 347 Mo. 690, 148 S.W.2d 503. Union Electric was permitted to place its lines in right of way acquired through condemnation by St. Louis Public Service Company. The right of way was later abandoned and title to it returned to the abutting owners. Thereafter the Highway Commission condemned the abandoned right of way as a right of way for highway purposes. Union Electric claimed an entitlement to the condemnation award contending that it had acquired an easement in the premises by either the original permit to place its lines on the tract or by prescription. The court denied the claim of Union Electric, holding that 'Since the railroad company had only an

easement interest in the land it had no right to grant an additional easement burden * * * beyond the period of use by the railroad for right of way purposes.' 148 S.W.2d l.c. 506[6]. Similarly, the judgment according Bell rights in plaintiffs' property cannot stand because it may not be said that Bell received a right from the Highway Commission which outlives the use of the property by the Commission as highway right of way. Bell's status in these circumstances is well described in *Nelson v. American Tel. & Tel.*, 270 Mass. 471, 170 N.E. 416, 420: 'The defendant at all times must be held to have known that the instrument under which it was permitted to occupy and use the locus was a mere license which was revocable and gave it no estate or interest in the land. It was also bound to know when it entered upon and used the locus that the license was revocable not only at the will of the owner of the property on which it is to be exercised but by his death, by alienation or demise of the land by him, and by whatever would deprive the original owner of the right to do the acts in question or give permission to others to do them.'

Such was the state of the law prior to the enactment of the 1974 amendment to § 392.080, which by its plain language declares that whatever use an accepting telephone or telegraph company has in public streets or alleys shall not be effected by the vacation of such roadways. In other words, the effect of the amendment is to convert the *permissive* use of the type noticed in *Franke* into a *permanent* use. It is this conversion that the City asserts is violative of § 13 of Article I.

Bell argues that the City's rights in the streets and alleys within its borders are not impacted adversely by the amendment and that it should not be heard to complain. To the contrary, it is suggested that the argument simply denies the complex realities of municipal government; because, it cannot be argued tenably that the effect of permanently fixing property rights in the vast majority of the hundreds of miles of streets lying within the City does not result in a "substantial prejudice" to the City or its many citizens. The City has the important and indispensable duty to govern the use of its streets, and alleys, in such a manner as to serve the welfare of the public. Exercise of such control and responsibility of necessity must include the right and duty to vacate or abandon certain streets and alleys when the public would be better served by a different use thereof. In this case, the City determined that the areas here involved were blighted and that all would benefit by the complete restructuring thereof. If the statute were to stand, each and every time the City decided that lands encumbered by the "real property public easement" could be used better for the public welfare the implementation thereof could be frustrated entirely by the potential expense of relocating conduits, cables and other equipment, if Bell agreed, or the expense of condemnation proceedings and payments, if it did not. Any arguments that the interests of the City are not adversely affected are totally without merit.

The City's counterclaim is an action for a declaratory judgment which is regulated by Rule 87 and §§ 527.010–527.140, RSMo 1978. Paragraph (a) of Rule 87.02 provides that: "Any person . . . whose rights . . . are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." For such purposes, the City is declared to be a "person" by Rule 87.05 and it properly may seek a declaration as to § 392.080, as amended in 1974; and, we further find that the purported conversion of what had been found to be a permissive use prior to the 1974 amendment, *Franke*, into a permanent and vested real property public easement has the effect of changing Bell's interest in said streets and alleys. Thus, the 1974 amendment renders § 392.080 a law retrospective in its operation.

Though not addressed by the parties, it is equally clear that the 1974 amendment

is violative of the ban on local or special laws found in Art. III, § 40(28), of the Missouri Constitution. It is well settled in this state that a statute which relates to persons or things as a class is a *general* law, while a statute which relates to particular persons or things of a class is considered a *special* law. *Collector of Revenue of the City of St. Louis v. Parcels of Land*, 517 S.W.2d 49 (Mo.1974); *State v. Ward*, 328 Mo. 658, 40 S.W.2d 1074 (1931); *Ewing v. Hoblitzelle*, 85 Mo. 64 (1884); *State ex rel. Lionberger v. Tolle*, 71 Mo. 645 (1880). While we make no judgment as to the reasonableness of the classification contained in the original portion of the statute, the 1974 amendment confers a special privilege and benefit upon telecommunications companies vis-a-vis other utility companies whose customers might be served through the use of public streets and alleys. As we said in *Phillips v. The Missouri Pacific Railway Company*, 86 Mo. 540, 542 (1885) and *Humes v. The Missouri Pacific Railway Company*, 82 Mo. 221, 231 (1884):

It is settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons 'who are or may come into like situations' is not partial (citations omitted).

Conversely, the 1974 amendment is partial in that it does not include and benefit all companies which distribute their services beneath the public ways. In *State v. Currency Services, Inc.*, 358 Mo. 983, 218 S.W.2d 600, 605 (1949), we said:

No person or class of persons can be excluded from that privilege while others are permitted to enjoy it, unless some reason exists for the distinction having a just relation to the object to be accomplished.

There appears to be no reasonable constitutional basis for granting a permanent easement to a telecommunications company while not creating a similar *vested* easement for electric, water or other utility companies whose services might be provided through underground facilities. See *Union Electric Company v. Land Clearance For Redevelopment Authority of the City of St. Louis*, 555 S.W.2d 29 (Mo. banc 1977), involving the same renewal project.

As we have determined that § 392.080, presently, is violative of § 13 of Art. I, nothing would be gained by considering the trial court's findings that the statute also contravenes the due process clause of § 10 of Art. I or the ban of § 23 of Art. III against multiple subject statutes. We do mention, however, that the amendment appears to encumber permanently the fee underlying the City's streets and alleys without any remuneration therefor. The statutory law of this state provides public utility companies with an orderly procedure for the condemnation of lands they believe necessary to provide their customers with service. Such statutes illustrate that it is contemplated that utility companies use the condemnation process to acquire needed lands. Clearly, the 1974 amendment runs counter to this policy by allowing a telecommunications company to encumber permanently and continuously the lands of another without availing itself of the procedure intended to ensure equity and fair dealing between such a company and owners of property lying within its service area.

■ The final issue requiring consideration is the effect of our present ruling on § 392.080. More specifically, we must decide whether any portion of the statute shall remain valid. In this connection, we note that many years ago this Court determined that the installation of telephone wires and poles along a city street was a proper "viatic" use of such street. *Julia Building Company v. Bell Telephone Company*, 88 Mo. 258 (1885). *Julia* recognized that Bell was erecting telephone poles pursuant to § 879, RSMo 1879, a predecessor of § 392.080. In fact, the operative language of the original portion of the statute first appeared in the Missouri Laws of 1851, p. 286, § 2. In light of the venerable history of the original statute, we have no difficulty in finding that all the severability requirements enunciated in § 1.140, RSMo 1979, are satisfied; and therefore, only the 1974 amendment to § 392.080 is unconstitutional.

Having found that § 392.080, as amended in 1974, is unconstitutional, we cannot say that the trial court erred in finding that there was no genuine issue of fact to be adjudicated on the City's counterclaim; and, therefore, the order of partial summary judgment was properly entered and is hereby affirmed.

The cause is remanded for such further proceedings as may be proper in the premises.

DONNELLY, RENDLEN, WELLIVER and HIGGINS, JJ., concur.

BARDGETT, C. J., concurs in separate concurring opinion filed.

SEILER, J., concurs and concurs in separate concurring opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, concurring.

I concur in the principal opinion as to those issues raised, briefed and argued, and with the result reached. I do not decide the Art. III, § 40(28), Constitution of Missouri, questions nor the other questions which are not necessary to the decision in this case.