256 F.Supp.2d 966 (2002)
XO MISSOURI, INC. and SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiffs,
v.
CITY OF MARYLAND HEIGHTS, Defendant.
No. 4:99-CV-1052 CEJ.
United States District Court, E.D. Missouri, Eastern Division.
September 23, 2002.
*967 William L. Davis, Moser and Marsalek, P.C., St. Louis, Howard J. Symons, William A. Davis, Tara M. Corvo, Amy L. Bushyeager, Mintz and Levin, Washington, DC, Daniel Gonzalez, Theodore S. O'Neal, Nextlink Illinois, Oak Brook, IL, *968 Renardo L. Hicks, Harrisburg, PA, Suzanne L. Montgomery, Thompson Coburn, James W. Erwin, Stephen B. Higgins, Thompson Coburn, John F. Medler, Jr., Southwestern Bell Telephone L.P., St. Louis, for XO Missouri, Inc., Southwestern Bell Telephone Company, plaintiffs.
Howard Paperner, Devoto Law Offices, R. Henry Branom, Jr., R. Henry Branom Jr., P.C., St. Louis, for Maryland Heights, City of, defendant.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court on the motion of plaintiff Southwestern Bell Telephone Company for partial summary judgment on Count I. See Fed.R.Civ.P. 56(c). Defendant has filed a cross motion for summary judgment, and the issues have been fully briefed.
Plaintiffs Southwestern Bell Telephone Company ("SWBT") and XO Missouri, Inc. ("XO") bring this action against the City of Maryland Heights ("the City") seeking a ruling invalidating Ordinance No.XXXX-XXXX ("the Ordinance").

I. Background

On December 3, 1879, the Bell Telephone Company of Missouri, a predecessor of SWBT, was incorporated in the State of Missouri under Article V, Chapter 21 of the Revised Statutes of Missouri of 1879 ("Article V"). Plaintiff alleges that through Article V, the State of Missouri tendered an offer to entities such as SWBT to incorporate under the statute and thereby enter into a contract with the state to provide telephone and/or telegraph services to the state's population. SWBT asserts that it accepted the state's contract by incorporating under Article V and through establishing and maintaining telephone services within the State of Missouri. Thus, plaintiff alleges that a binding contract was formed between the State of Missouri and SWBT's predecessor.
SWBT asserts that one of the rights granted to it under the contract was "the authority] to set their poles, piers, abutments, wires, or other fixtures, along, and across any of the public roads, streets, and waters of this state, in such a manner as not to incommode the public in the use of such roads, streets, and waters." R.S.Mo. § 879 (1879). Further, SWBT asserts that it was also granted the right to place its facilities within the public rights-of-way throughout the State of Missouri without first obtaining municipal consent. See R.S.Mo. §§ 879, 888 (1879). SWBT contends that these rights are vested contract rights that cannot be impaired or taken by subsequent legislative acts or municipal ordinances.
On December 7, 2000, the City Council of Maryland Heights adopted the Ordinance. The Ordinance requires providers of communications services:
1) to pay "an annual license fee" equal to the greater of the "per lineal foot fee established from time to time by the City in an annual fee schedule OR five per cent of [the provider of communications service's] gross revenues from the provision for hire of telecommunications services and facilities in the public rights-of-way," where "gross revenues" is defined to include revenues derived "directly or indirectly" by the "Licensee, its affiliates, subsidiaries, parent companies, Lessees, and from any person in whom the Licensee has a financial interest" from the provision of telecommunications services originating or terminating at any location in the City via public right-of-way, see, §§ 4.7(1),(2);
2) to pay an "application fee" of an amount to be fixed by the City Administrator *969 to apply for a "license" to use the public right-of-way, see § 4.5(3);
3) to enter into a "license agreement" with the City, see, § 4.2;
4) to permit City employees to order a provider of telecommunications services to remove facilities from the right-of-way at its own expense and to seize, remove, disable or destroy a provider's facilities in the right-of-way if the City believes that there has been a material violation of the Ordinance, see § 1.12(4)(c).
In addition, the Ordinance imposes the following requirements on providers of telecommunications services without limitation or qualification:
1) to "register" with the City before installing, repairing or operating a communications facility within the City right-of-way, see § 1.6;
2) to obtain "authorization" from the City before installing, repairing, or operating a communications facility within the City right-of-way, see §§ 1.7, 1.8;
3) to furnish to the City maps showing the precise location of all existing facilities within the City right-of-way and to make those proprietary maps available to the City, where they will be able to be obtained by competitors under Missouri's "Sunshine" laws, see § 1.10(1);
4) to pay monetary penalties for ordinance violations, see § 1.12(2);
5) to indemnify and defend the City against lawsuits and judgments relating in any way to communications facilities within the right-of-way, see § 1.18(1);
6) as a condition to using any City right-of-way, to obtain a Commercial General Liability policy of insurance in the amount of Two Million Dollars with a One Million Dollar umbrella policy, see § 1.18;
7) to fill out a detailed application for a license by, inter alia, listing its qualifications to be a telecommunications provider, see 4.5(6)(a); and
8) to allow the City to co-locate its own proprietary facilities on a telecommunication provider's poles or conduits, see § 4.6(1).
On December 7, 2000, the City Council of Maryland Heights adopted Resolution No.2000-631 ("the Resolution") which sets the amount of the per lineal foot fee imposed by § 4.7 of the Ordinance. It establishes a per lineal foot fee calculated as:
For each cable up to four inches in diameter placed in the rights-of-way of the City, an entity must pay $1.74 per lineal foot. For each cable over four inches in diameter placed in the rights-of-way of the City, an entity must pay $.14 per square inch of cross-sectional area per lineal foot. See § B(1).
In its motion for summary judgment, SWBT seeks a declaration that enforcement of the Ordinance would impair SWBT's contract with the State of Missouri in violation of the Contracts Clauses of the Missouri and United States Constitutions. Defendant, in its motion for summary judgment, seeks a ruling that SWBT did not enjoy the perpetual state-wide franchise it claims at the time of its incorporation.

II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a *970 judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

III. Discussion

SWBT asserts that it enjoys a perpetual state-granted franchise, through a contract with the State of Missouri, to construct and maintain its telephone service facilities on the public roads, streets and waters of the Missouri. Thus, the City does not have the authority to impose its right-of-way ordinance on SWBT. The Court will first address whether there is a binding contract between SWBT and the State of Missouri.
According to SWBT, the State of Missouri tendered an offer to telegraph and telephone companies in 1879 to provide telecommunication services to the state's population. Plaintiff believes that the offer was tendered through Article V, Chapter 21 of Missouri's Revised Statutes. Article V granted companies incorporated under it the "power to construct, own, operate and maintain lines of telephone and magnetic telegraph between such points as they may, from time to time, determine.." R.S.Mo. § 875 (1879). It further granted companies authorization to "set their poles, piers, abutments wires and other fixtures, along, and across any of the public roads, streets and waters of [Missouri], in such a manner as not to incommode the public in the use of such roads, streets and waters." R.S.Mo. § 879 (1879).
In December of 1879 the Bell Telephone Company of Missouri was incorporated as a telephone and telegraph company pursuant to Article V, Chapter 21 of the Revised Statutes of Missouri of 1879. See City of St. Louis v. Bell Tel. Co., 96 Mo. 623, 10 S.W. 197 (1888). In 1913, Bell Telephone Company filed an affidavit with the Missouri Secretary of State certifying its change of name to The Southwestern Telegraph and Telephone Company. In 1917, The Southwestern Telegraph and Telephone Company merged with The Missouri and Kansas Telephone Company to form SWBT. Under the terms of the merger, both companies assigned their property, rights and privileges to SWBT. Thus, SWBT is the successor to Bell Telephone Company, and thus entitled to all rights and privileges granted to Bell Telephone by the State of Missouri under Article V. See State ex rel. Wabash Ry. Co. v. Roach, 267 Mo. 300, 184 S.W. 969 (1916).
SWBT alleges that Article V was an offer to enter into a contract that was made to companies that incorporated under the statute. The Missouri Supreme Court has held that a state "can exercise *971 its sovereign power to grant the right to operate within corporate limits directly and without requiring municipal consent if it chooses to do so." Missouri Utilities Co. v. Scott-New Madrid-Mississippi Electric Co-op., 475 S.W.2d 25, 29 (Mo. 1971)(en banc). Furthermore, courts in other states have construed provisions like Article V and have concluded that they constitute an offer to companies to provide services to the state's residents. See, e.g., Los Angeles County v. Southern Cal. Tel. Co., 32 Cal.2d 378, 196 P.2d 773, 777-778 (1948)(en banc) (holding that California's counterpart to Article V was a "continuing offer extended to telephone and telegraph companies to use the highways"); City of Lansing v. Mich. Power Co., 183 Mich. 400, 150 N.W. 250, 253 (1914). Several other courts have recognized that by incorporating under a statute and erecting, constructing, and maintaining telephone lines pursuant to the statute, a telephone company accepts the state's offer, thereby entering into a valid and enforceable contract with the state. See, e.g., Russell v. Sebastian, 233 U.S. 195, 205-208, 34 S.Ct. 517, 58 L.Ed. 912 (1914); TCG Detroit v. City of Dearborn, 16 F.Supp.2d 785 (E.D.Mich. 1998), affirmed 206 F.3d 618, 625-626 (6th Cir.2000); Postal Telegraph-Cable Co. v. RR Comm'n of Cal., 200 Cal. 463, 254 P. 258, 261 (1927)(en banc); City of Des Moines v. Iowa Tel. Co., 181 Iowa 1282, 162 N.W. 323, 327 (Iowa 1917); Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 86 N.W. 69, 73 (1901); City of Lansing, 150 N.W. at 252-253; Southern Bell Tel. & Telegraph Co. v. City of Meridian, 241 Miss. 678, 131 So.2d 666, 670 (1961).
The Court finds the foregoing persuasive. As such, this Court finds that, by enacting Article V, Missouri tendered an offer to telephone companies to incorporate in Missouri. Through its acts of incorporation and later acts of constructing and maintaining its telephone facilities, SWBT accepted Missouri's offer, thereby creating a valid and binding contracting between SWBT and the State of Missouri. As consideration for its contract with Missouri, SWBT expended considerable sums of money in establishing and maintaining adequate telecommunications services which benefitted the citizens of the State of Missouri. See City of Lansing, 150 N.W. at 253; State ex. inf. McKittrick v. SW Bell Tel. Co., 338 Mo. 617, 92 S.W.2d 612, 613 (1936)(en banc); State ex rel Kansas City v. East Fifth St. Ry. Co., 140 Mo. 539, 41 S.W. 955, 956 (1897); Washington University v. Baumann, 341 Mo. 708, 108 S.W.2d 403, 406 (1937).
Having found that there was a valid contract between SWBT and the State of Missouri, it is important to note the power reserved to municipalities under the contract. As SWBT argues, the only power reserved to the municipalities within Article V was the limited right to:
by ordinance or otherwise, specify where the posts, piers or abutments shall be located, the kind of posts that shall be used, the height at which the wires shall be run;... and after the erection of said telephone or telegraph lines, [the municipality] shall have power to direct any alteration in the location or erection of said posts, piers or abutments, and also the height at which the wires shall run. R.S.Mo. § 888 (1879).
The Court now turns to the issue of whether the Constitution of the United States or the Missouri Constitution protects SWBT's contract from impairment by subsequent state legislation, constitutional provisions or subsequent municipal ordinances.
The Contract Clauses of the United States and Missouri Constitutions prohibit the government from enacting any law or adopting any ordinance that impairs the obligation of contracts. U.S. Constitution, *972 Article I, § 10; Missouri Constitution, Article I, § 13. The Court has already held that SWBT entered into a contract with the State of Missouri which granted SWBT the right to "construct, own, operate and maintain lines of telephone and magnetic telegraph between such points as they may, from time to time, determine," R.S.Mo. § 875 (1879), and the right to "set their poles, piers, abutments wires and other fixtures, along, and across any of the public roads, streets and waters of [Missouri]," R.S.Mo. § 879 (1879). Such a contract granting SWBT the right to use the public rights-of-way cannot be impaired by subsequent state legislation and/or municipal ordinances. See, e.g., City of Meridian, 131 So.2d at 675 (finding that telephone company whose predecessors had accepted and acted on statutory offer of right to use city streets acquired irrevocable contract right, which was protected by contract clause of state constitution and was violated by statute imposing charge or rent for use of streets); Postal Telegraph-Cable Co., 254 P. at 261 (finding that the rights acquired by the telegraph company, by accepting and availing itself of provisions of statute, are vested rights which both state and federal constitutions protect and cannot be taken away by the state); City of Lansing, 150 N.W. at 253 ("[T]his tender and acceptance constitute a contract between the state and defendant beyond the power of the Legislature, the Constitution, or of this court to impair by destroying the contract rights to remain in the street."). Thus, although the State of Missouri amended § 879 in 1889 to require municipal consent before a telephone company could place its facilities in underground conduits, R.S.Mo. § 2721 (1889), and although this section was amended again in 1903 to require municipal consent before a telephone company could place its "wires, poles, and other fixtures in any city," 1902 Mo. Laws 137-138, these amendments do not apply to SWBT because they are invalid impairments on the contract rights guaranteed to SWBT in 1879. See, e.g., TCG Detroit, 16 F.Supp.2d at 796-797; Iowa Tel., Co. v. City of Keokuk, 226 F. 82, 90-93 (S.D.Iowa 1915); City of Lansing, 150 N.W. at 252. Furthermore, application of the Ordinance to SWBT would also unconstitutionally impair SWBT's contract rights. See Mercantile Trust & Deposit Co. v. City of Columbus, 203 U.S. 311, 27 S.Ct. 83, 51 L.Ed. 198 (1906) (holding that the constitutional provision prohibiting a state from enacting any law impairing the obligation of contracts also prohibits a municipality's enactment of an ordinance impairing a contractual right). The contract between SWBT and the State of Missouri granted to municipalities the limited right to regulate three things: the location of the poles, the types of poles used, and the height of the wires. The Ordinance at issue tries to regulate much more than these three things. Thus, the Ordinance is invalid as applied to SWBT.
The Court will now address the City's arguments as to why the Court should still not grant plaintiff the relief it is requesting. First, the City contends that under the Missouri Constitution, its power to tax cannot be suspended, surrendered or contracted away and argues that "Southwestern Bell never enjoyed the exemption from municipal regulation and taxation that it claims." The City misconstrues SWBT's argument. SWBT is not contesting the City's power to tax. Rather, SWBT is contesting is the City's ability to regulate use of the public rights-of-way. Thus, defendant's argument is inapposite.
The City next argues that Article V, Chapter 21 of Missouri Revised Statutes of 1879 should be declared unconstitutional as it violates the Missouri Constitution of 1875. Specifically, defendant argues that the statute violates the prohibition on the *973 General Assembly against passing any law that makes an irrevocable grant of special privileges or immunities. See Article 2, § 15 of Missouri's Constitution of 1875, carried forward to Article 1, § 13 of the current Missouri Constitution. Defendant has not elaborated on its argument other than to boldly claim that "Southwestern Bell argues that it has special privileges and immunities that were unconstitutional at the time of its incorporation." The City has not identified the special privileges it believes that SWBT was given in violation of the Missouri Constitution, nor has defendant persuasively argued why this Court should declare a Missouri statute unconstitutional. Further, the Court notes that on the sole occasion that the Missouri Supreme Court was faced with this same issue, i.e., whether Article V, Chapter 21 of Missouri Revised Statutes of 1879 violated the prohibition against making an irrevocable grant of special privileges, the court declined to address the issue and instead simply declared the 1974 amendment to the statute to be unconstitutional. See Planned Industrial Expansion Authority of the City of St. Louis v. Southwestern Bell Telephone Co., 612 S.W.2d 772, 777 (Mo.l981)(en banc). The court stated, "While we make no judgment as to the reasonableness of the classification contained in [Article V, Chapter 21 of the Missouri Revised Statutes of 1879], the 1974 amendment confers a special privilege and benefit upon telecommunications companies vis-a-vis other utility companies whose customers might be served through the use of public streets and alleys." Id. (The court found the 1974 amendment to be unconstitutional because it granted a permanent easement to telecommunications companies that were incorporated under the statute but the amendment did not vest similar rights in other utility companies whose services might also be provided through underground facilities.) Following the lead of the Missouri Supreme Court, this Court also declines to declare Article V, Chapter 21 unconstitutional.
The City argues, citing two Missouri cases, that Missouri courts have upheld a municipality's right to "impose reasonable conditions" on a telephone company's use of the public right-of-way and that "relatively recently, the Missouri Supreme Court has upheld the authority of cities to regulate Southwestern Bell." Defendant relies upon the case of State ex inf. McKittrick ex rel. City of Lebanon v. Missouri Standard Tel. Co., 337 Mo. 642, 85 S.W.2d 613 (1935)(en banc), for the proposition that Missouri courts have rejected the argument that the 1879 statute prohibits municipal regulation of telephone companies. The City is correct that the Missouri Standard Telephone Company made the same argument, nearly 70 years ago, that SWBT makes here. However, the Missouri Supreme Court rejected Missouri Standard's argument based on the fact that Missouri Standard's predecessors were incorporated in 1908 and 1909, over twenty years after the 1879 statute was amended to require municipal consent. Because this Court has already held that SWBT's contract rights arose in 1879, before the requirement of municipal consent was added under the statute, the holding of City of Lebanon simply does not apply here.
Defendant also cites Planned Industrial Expansion Authority of the City of St. Louis v. Southwestern Bell Telephone Co., for the proposition that the Missouri Supreme Court has previously rejected Southwestern Bell's argument that it was not subject to municipal regulation. 612 S.W.2d 772. As discussed above, that case addressed the nature of SWBT's ownership interest in the portions of the streets and alleys where SWBT had placed its facilities. The court held that SWBT's use *974 of the rights-of-way did not rise to the level of real property ownership. In this case, SWBT is not claiming it has any real property ownership in the rights-of-way, it is simply seeking to prevent the City from unconstitutionally restricting its access to the rights-of-way. Thus, the ruling in Planned Industrial does not govern the facts in this case.
The City next argues that it has statutory authority to regulate SWBT's use of the public right-of-way. Defendant relies on two statutes enacted after SWBT was granted its state-wide contract rights. As discussed above, the State of Missouri cannot constitutionally take away contract rights or a grant of authority previously given to SWBT. Thus, defendant's argument fails.
Defendant argues that the authority to impose the Ordinance on SWBT is within the scope of its police power to protect the public health and welfare. However, as SWBT notes, the City's police power is limited and does not extend to the many regulations that the Ordinance seeks to impose on SWBT. Police power is merely the exercise of a government's right to "promote order, safety, health, morals and the general welfare of society, within constitutional limits." Marshall v. Kansas City, 355 S.W.2d 877, 883 (Mo. 1962)(en banc). As the Missouri Supreme Court explained in State ex rel, City of St. Louis v. Laclede Gaslight Co.,
[Legislatures and municipalities] cannot, in the exercise of assumed police powers, violate charter contracts, and overthrow vested rights.... The limit to the exercise of police power in these cases must be this: The regulations must have reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter in curtailment of the corporate franchise. 102 Mo. 472, 14 S.W. 974, 980 (1890).
Defendant does not identify which provisions of the Ordinance it believes to be a valid exercise of its police power. However, the City's police power does not extend to imposing requirements that SWBT enter a franchise or license agreement, indemnify the City, submit detailed application forms, provide confidential and proprietary business development information, obtain insurance, or pay gross revenues for the use of the right-of-way. Accordingly, the requirements imposed by the City's right-of-way usage ordinances are not proper exercises of the police power. Defendant next argues that SWBT has waived its state-wide perpetual franchise by entering into five local franchise or license agreements with other municipalities. Missouri courts have held that "to rise to the level of waiver," the actions of a party to a contract "must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [its] conduct is possible." Waterwiese v. KBA Constr. Managers, Inc., 820 S.W.2d 579, 585 (Mo. Ct.App. 1991). The Missouri Supreme Court has stated that absent evidence "clearly" meeting this standard, waiver of an established contract right can never be presumed. Langdon v. Kleeman, 278 Mo. 236, 211 S.W. 877, 878 (1919). This Court agrees with the court in Southern Bell Telephone & Telegraph Co. v. City of Meridian which held that entering into a franchise agreement with a municipality does not rise to the level of waiving a contract right. 131 So.2d at 674-675. "The city can regulate under its police power, and a utility has a right to maintain *975 cooperative relationships with a municipality without waiving its rights under a statutory grant." Id. SWBT never entered any type of franchise agreement with the City of Maryland Heights, nor has it ever conceded that it was subject to the regulatory authority of the City beyond the limited regulations permitted under the contract with the State of Missouri. As such, this Court finds that SWBT has not acted in such a way to sustain a finding that SWBT waived its rights under the contract.
Plaintiff XO argues that the Court should not grant summary judgment to SWBT because to do so would violate the Federal Telecommunications Act of 1996 ("FTA"). 47 U.S.C. § 253. XO asserts that by granting SWBT's motion, the Court will be denying XO "the opportunity to compete with Southwestern Bell on a level playing field," in violation of § 253(c) of the FTA. XO asserts that exempting an incumbent carrier, like SWBT, from certain regulations while applying those regulations to new entrants, like XO, would violate the FTA's mandate that a municipality's ordinance be competitively neutral. XO bases its argument on an amicus curiae brief submitted by the Federal Communications Commission ("FCC") in the Second Circuit case of TCG New York v. City of White Plains, 125 F.Supp.2d 81 (S.D.N.Y. 2000), in which the FCC stated,
Although the meaning of the phrase "competitively neutral" depends in part upon the specific provisions of a challenged ordinance and the facts relating to its application... [i]n a number of orders applying section 253, the Commission has stated that exempting an incumbent carrier from certain forms of regulation while applying those regulations to new entrants does not constitute "competitive neutrality."
XO's argument suffers from two fatal flaws. First, as SWBT points out, XO completely ignores the fact that the case of TCG New York differed factually from the case at hand. In TCG New York the municipality asserted that Bell Atlantic was exempted from the fees it sought to impose on the plaintiff telecommunications carrier based not upon a constitutionally protected contract right but instead upon Bell Atlantic's history of permitting the municipality to use its conduits without charge. 125 F.Supp.2d at 98-100. Thus, the amicus brief from the FCC did not address the issue the Court has been presented with in this case; whether § 253(c) of the FTA gives a municipality authority to override a telecommunications provider's constitutionally protected right to be free from impairment of its contracts.
The second flaw lies in XO's assumption that an ordinance cannot be competitively neutral if it is not applied identically to all telecommunications providers. This issue was addressed in TCG Detroit v. City of Dearborn, 16 F.Supp.2d 785 (E.D.Mich. 1998) affirmed 206 F.3d 618 (6th Cir. 2000). In TCG Detroit the district court held that it was not a violation of § 253(c) for a municipality to exempt Ameritech, a telecommunications company that was found to have a state-wide legislatively granted contract to operate throughout Michigan, from the regulations and fees imposed by the municipality's right-of-way ordinance while continuing to impose those requirements on new telecommunications providers. The district court stated,
TCG goes too far by equating the City's answer that the requirements will not be identical with the contention that it is unequal or discriminatory. TCG presents no evidence to the Court that the City must impose exactly the same agreement on each telecommunications provider without consideration of each providers' size, contemplated use of the right-of-way, space available and the like. Moreover, the explicit language of *976 the statute does not require such strict equality. All that is required is that the compensation sought be non-discriminatory and competitively neutral. 47 U.S.C. § 253(c). In fact the position that TCG is advocatingexact parity was specifically considered, and rejected, by Congress in drafting the [FTA], 16 F.Supp.2d at 792.
After a review of the legislative history surrounding the FTA, this Court agrees with the district court's finding that there is no specific requirement for strict equality within the FTA. Thus, plaintiff XO's argument that exempting an incumbent carrier from certain regulations while applying those regulations to new entrants would violate the FTA is simply unavailing.
Further, the FTC itself noted that the meaning of the phrase "competitively neutral" depends in part upon the specific provisions of a challenged ordinance and the facts relating to its application. XO has not cited which provisions of the Ordinance it believes, if not applied to SWBT but applied to XO, would cause the Ordinance to be discriminatory. Because under the contract between SWBT and the State of Missouri, the City can only regulate the location of the poles, the types of poles used and the height of the wires, SWBT could, in theory, avoid paying any fees to the City under the Ordinance and thereby undercut its competition. Such an occurrence could result in a barrier to entry by newcomers, as the Sixth Circuit stated in TCG Detroit, when it affirmed the district court's holding,
The fact that Ameritech prevailed before the district court in its contention that state law prohibits the City form subjecting it to the franchise fee charged others does not mean that the City is thereby discriminating in Ameritech's favor. Possibly, if Ameritech thus enjoys a state-mandated freedom from such fees, its competitive position is strengthened, and it might be able, in theory, to undercut its competition; if it did so, the result might be a barrier to entry by newcomers. But this would be a different issue, and TCG has not alleged that this has occurred. 206 F.3d at 625.
However, just as the Sixth Circuit found, this issue is not before the Court at this time.
Accordingly,
IT IS HEREBY ORDERED that the motion of plaintiff Southwestern Bell Telephone Company for partial summary judgment as to Count I of its complaint [# 113] is granted.
IT IS FURTHER ORDERED that the motion of defendant City of Maryland Heights for summary judgment on Count I of the complaint [# 131-1] is denied.