GEORGE O. NELSON *vs.* AMERICAN TELEPHONE AND
TELEGRAPH COMPANY.

Berkshire. December 2, 1929. — February 26, 1930.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Equity Jurisdiction,* To enjoin trespass. *License. Easement. Frauds,
Statute of. Trespass.*

In 1893 an owner of land signed and delivered to a telephone company
a writing, not under seal and not acknowledged, whereby, for a cer-
tain consideration, he granted to the company the right to construct
and maintain its lines over his property, including the right to set
the necessary poles and guy wires and to trim the trees so far as re-
quired. The company thereupon set thirty-two poles, with necessary
cross arms and guy wires, in a strip of the land thirty-five hundred
feet long and thirty feet wide, which it cleared of trees for that pur-
pose. It maintained the poles without substantial change, except for
necessary repairs and trimming of trees and brush, from that time con-
tinuously until 1926. In 1910 the title to the land was registered; and
in 1916, through mesne conveyances, the owner's son acquired title
and held it continuously thereafter. Neither in the deeds nor the
certificates of title issued by the Land Court was the company men-
tioned as being possessed of any encumbrance or right in the land.
Shortly after 1893 the son learned that the poles and wires had been
erected with his father's permission; he lived on the land from 1903
to 1926 and at all times was aware of their maintenance by the com-
pany. At no time previous to 1923 did he protest or object to the
company's acts. In September, 1923, he wrote a letter to the company
to the effect that, it having maintained the poles and wires since 1910
without remuneration, he desired that it would make some kind of
settlement. In 1926 he brought a suit in equity against the com-
pany to compel it to remove the poles and wires and for damages.
It appeared that the cost of removing them and of rerouting the
defendant's line would be about $5,000; and that the amount of
damage to the plaintiff by reason of the defendant's retaining a per-
manent easement to maintain its line as then maintained would be
$400. A judge of the Superior Court ruled that the defendant was a
licensee; that the letter in September, 1923, was a revocation of the
license; and that "it would be inequitable to grant mandatory re-
lief"; and a final decree was entered denying the plaintiff's prayer
for an injunction and ordering the defendant to pay the plaintiff
$400 as damages for the defendant's retention of a permanent ease-
ment. *Held,* that

(1) The rulings, that the defendant was a licensee and that the letter in September, 1923, was a revocation of the license, were correct;

(2) The defendant's occupation of the land after that time was a continuous trespass;

(3) The ruling that the plaintiff was not entitled to a mandatory injunction was not warranted by the plaintiff's knowledge of the presence of the line on his land nor by his acquiescence in the defendant's acts, nor by the fact that the plaintiff delayed three years in bringing the suit after revoking the license: the defendant must be taken to have known that it had been occupying the land under a mere revocable license which gave it no estate therein;

(4) The defendant being guilty of a continuous trespass, the denial of the mandatory injunction was not justified on the ground that the expense to the defendant of removing its line was greatly disproportionate to the damage resulting to the plaintiff through the retention of the line, or on the ground that the plaintiff had not suffered irreparable loss;

(5) The final decree was reversed and the suit remanded to the Superior Court to determine the time necessary for the defendant to remove its line and restore the plaintiff's land to a proper condition, and to assess the plaintiff's damages from September, 1923.

BILL IN EQUITY, filed in the Superior Court on May 15, 1926.

The bill, material facts found by a master to whom the suit was referred, interlocutory decrees and a final decree are described in the opinion. The first interlocutory decree and the final decree were entered by order of *Burns*, J., and the second interlocutory decree by order of *Lummus*, J. The plaintiff appealed from all decrees.

*F. M. Myers*, for the defendant.

*E. D. Getman*, for the plaintiff.

PIERCE, J. This is a bill in equity brought by the owner of land to compel the defendant to remove certain poles and wires from his land and for the assessment of damages. The answer of the defendant, a corporation duly organized by law with a usual place of business in Massachusetts, in part is a general denial, in part a claim of an easement by grant to maintain a line of poles and connections as said line of poles has been constructed and maintained for a period of more than thirty years; and the further answer "that in reliance upon the grant of right of way originally made to the defendant to maintain said poles and telephone line on said land and in reliance upon the permission

to maintain said poles and telephone line, . . . the defendant has expended large sums of money in the erection of its line over said land and in the construction of lines connected therewith; that to now remove said telephone poles and telephone line and wires from the land of the plaintiff would subject the defendant to great inconvenience and loss incommensurate with the benefit to the plaintiff, and that to compel the defendant to remove the same, as aforesaid, would operate oppressively and inequitably; that the damage to the plaintiff, if any, by the continued maintenance of said line and the continued use of said right of way would be slight, and of no consequence, and that the plaintiff has, for a long period of time, acquiesced in and assented to the maintenance of said telephone line and wires by the defendant, and its use thereof in accordance with the terms of the grant of right of way, and that the plaintiff's own laches prevents him from maintaining his bill of complaint."

By agreement the case was referred to a master to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party might request, and so much of the evidence as either party might request in order to present questions of law. In accordance with the order of reference a hearing was had by the master and a report made of his findings to the court. "Neither party has asked that any of the evidence be reported 'in order to present questions of law.'"

The master, in substance, finds the following facts: The plaintiff is the owner of a farm in Florida, Massachusetts, through which the defendant maintains a line of telephone poles and wires. There are thirty-two poles spaced at practically uniform intervals, and affixed to each pole near its top are four ten-foot cross arms, to which are attached thirty-four wires for the transmission of messages by telephone and by telegraph; a few of the poles are reinforced by guy wires, made fast to objects affixed to the soil; and with the exception of two additional wires which were strung from pole to pole in 1923, there has been no new construction as distinguished from general maintenance since the plaintiff acquired title in 1916. The strip of land

on which these poles stand is thirty-five hundred feet in length, with an average width of thirty feet, and fully one half of it was tree bearing before being cleared for the defendant's use. The places where the poles stand and the dimensions have remained unchanged from the beginning.

On June 15, 1893, the plaintiff's father, Wallace C. Nelson, then owner of the locus, signed and delivered to the defendant a document which was without seal or acknowledgment and read as follows: "$20 — Received of the American Telephone & Telegraph Co. of Massachusetts, Twenty Dollars in consideration of which I hereby grant unto said Company, its successors and assigns, the right to construct, operate and maintain its lines over and along the property which I own or in which I have any interest in the Town of Florida, County of Berkshire and State of Massachusetts, including the necessary poles and fixtures along the roads, streets, or highways adjoining the property owned by me in said town, in full payment for such right, and in full satisfaction for the trimming of any trees along said lines necessary to keep the wires cleared at least eighteen inches, and with the right to set the necessary guy and brace poles, and attach to trees the necessary guy wires." Upon the delivery of this document the defendant entered upon the locus and ran a line of poles and wires from end to end of the farm. Wallace C. Nelson retained title to the premises for the next seventeen years, and there is nothing in the evidence before the master "to show or to suggest" that he did not concur in the selection of the locus taken or in the uses then or subsequently made of it, or that he regarded any act committed by the defendant on his property as objectionable or unlawful. In so far as the reference in the document to roads, streets or highways, properly interpreted means that the poles were to follow the highway which crossed the farm, the master finds that Wallace C. Nelson acquiesced in the choice of a different site, for not one of the poles was placed upon or along the highway, and the course of the poles is the same now as it was when they were first erected.

In 1910, Wallace C. Nelson parted with all his right, title

and interest in and to this farm beyond a limited use for his natural life. In that year the New England Power Company bought such water and diversion rights as Wallace C. Nelson had owned in the Deerfield River, and a transmission line right of way over, across and upon said farm, and Benjamin A. Nelson, a son of Wallace C. Nelson, became the owner of the farm after its title had been thus diminished and had been registered by the Land Court. In none of the instruments effecting these numerous transfers is the defendant mentioned as an encumbrancer of the premises or in any other manner. In April, 1916, Benjamin A. Nelson conveyed the farm subject to existing encumbrances to the plaintiff, who has since remained seised and possessed of it. The defendant does not claim that when Wallace C. Nelson alienated this property it obtained from the new owner, or had obtained from any subsequent owner, any express license to maintain its line where it now is.

Sometime between 1893 and 1896 the plaintiff, then a resident of Rhode Island, revisited the farm and on that occasion discovered, if he did not already know, that a line of poles and wires had been placed upon it. In 1903, he returned to Massachusetts to live with his father on the farm and has since remained on the estate. For a period of thirty years prior to the commencement of this suit he knew of the existence of this line, and knew that it was with his father's permission that the defendant entered upon his farm, there set up and, until his death in 1912 or 1913, maintained its poles and wires.

After April 11, 1916, the day the Land Court issued to the plaintiff a duplicate certificate of title to this farm wherein no reference is made to any rights of the defendant, the defendant continued to keep its property intact and in repair and the locus open as it had theretofore done. Every other year between April 11, 1916, and May 15, 1926, the date of the filing of the bill of complaint, it cut down or trimmed the trees and brush for an average width of thirty feet. Between the same dates it replaced any poles, wires or cross arms that so required. During all these years the plaintiff was continuously on the premises and aware of

what was taking place, and he did not object to the defendant going on his land with teams and trucks save in one instance when he remonstrated against the cutting of trees growing near the edge of the locus.  Neither he nor any intervening owner between his father and himself ever notified the defendant or any one representing it that he objected to a continuance of its fixtures upon the locus, or, prior to September 8, 1923, made any claim for compensation for injury done to, or for use of, his land.

On September 8, 1923, he sent a letter to the treasurer of the defendant company which stated, in substance, that the defendant had maintained its poles and lines without remuneration to the plaintiff since 1910 and expressed a desire that the defendant would take the matter up at an early date and make some kind of a settlement.  In consequence of this letter and demand, in November, 1923, a representative of the defendant called upon the plaintiff in Florida, and upon his brother in Keene, New Hampshire, the next day.  The talk in these interviews, like the letter, related to the question of remuneration for past years.  The plaintiff testified that then was his first knowledge that the defendant claimed a right over his land, but the master finds, in view of the repeated acts of the defendant in looking after its property on the locus, that it cannot be said that the plaintiff was without notice of the defendant's pretensions previous to the interview of November, 1923.

The master further found that the costs in labor and materials alone of rerouting this part of the defendant's line would not exceed $5,203, unless extensive cutting of heavy timber or trees were encountered; that the new line when completed would not be inferior to the old in the efficiency of its service; that if damages are assessed as of April 11, 1916, they are $675, and $300 if assessed as of September 8, 1923, the date of the letter; and in either supposition the defendant is to have a reasonable time to remove its poles, wires and other property and to restore the plaintiff's land to a proper condition.  The master made no estimate of damages which have accrued since the plaintiff filed his bill or which are prospective, nor did

he make an estimate as to the value of a permanent easement in, over and upon this strip of land, as the defendant requested be done.

The defendant filed objections to the master's report; the plaintiff filed no objections. On the plaintiff's motion to overrule the defendant's objections and confirm the master's report, and on the defendant's motion to recommit, the judge on August 30, 1928, entered the order for decrees and ruling on motion to recommit, as follows: "The defendant's objections to the master's report are overruled and the master's report is hereby confirmed. Enter interlocutory decree. The court rules that defendant was a licensee. The letter of September 8, 1923, was notice to the defendant that it could no longer occupy under the license; it was a demand for rent in no specified amount. The court rules that it would be inequitable to grant mandatory relief. Accordingly the defendant's motion to recommit is allowed, and an interlocutory decree may be entered allowing said motion and directing the master to hear additional evidence, if any is offered, and make a finding, as to the amount of damage to the plaintiff by the retention by the defendant of a permanent easement over and across plaintiff's lands from September 8, 1923." On September 4, 1928, the court entered an interlocutory decree. On September 19, 1928, the plaintiff appealed from the orders for decrees and rulings on motions to recommit, and from the interlocutory decree.

Upon recommittal the master heard additional evidence offered by the defendant and on March 16, 1929, filed his supplementary report. No objections thereto were taken by the defendant; the plaintiff filed objections. On April 3, 1929, the case came before the court on the plaintiff's objections and exceptions to the master's supplemental report and an interlocutory decree was entered wherein, following a recitation that by the order entered August 30, 1928, and the interlocutory decree entered September 4, 1928, the plaintiff was denied an injunction and remitted to his remedy by way of damages, it was decreed, in substance, that the plaintiff's exceptions to the master's supplemental

report were overruled since they became immaterial by the disposition of said report, that the supplemental report "be not confirmed," and that "in lieu of the recommittal to the master of his supplemental report, with directions to draft and present a new supplemental report, hearing further evidence if either party desires him to do so in addition to the evidence already heard under the decree of recommittal entered on September 4, 1928, and to include in said report a finding as to the amount of damage to the plaintiff by the retention by the defendant from and after September 8, 1923, of a permanent easement over and across the plaintiff's lands of the right to maintain a line of poles as at present maintained, the poles to be of the same number as at present and fastened with the same number of guy wires as at present, together with all necessary or reasonable cross arms and wires which wires shall be used for the passing of currents of electricity for the transmission of intelligence by telephone or telegraph, which currents shall not exceed the voltage ordinarily or reasonably used for such purposes, and the right to pass and repass on foot or with vehicles with or without tools, equipment and materials over a strip thirty feet wide, the center of which strip shall be the center of said line of poles as at present maintained, for the purpose of inspecting, repairing, replacing, maintaining or working upon said poles and their equipment and for the purpose of cutting the trees and underbrush on said strip so that they shall not interfere with the wires, — it now appearing that there is no dispute between the parties as to the amount of the damages of the plaintiff resulting from the retention by the defendant of such permanent easement from said date, and that the parties, reserving however all questions of law heretofore saved by appeal and all questions of law relative to the materiality or propriety of such retention or assessment of damages which may exist or may arise in the cause, nevertheless agree in open court that such damages amount to Four Hundred Dollars ($400), the court now assesses said damages in the sum of Four Hundred Dollars ($400)." On April 13, 1929, the plaintiff appealed from this decree.

On May 27, 1929, after a substantial restatement of the facts as they are set forth in the interlocutory decree of April 3, 1929, a final decree was entered wherein it was "ORDERED, ADJUDGED AND DECREED that the plaintiff's prayer for an injunction be and hereby is denied and that the defendant pay to the plaintiff as damages to the plaintiff by the retention by the defendant of a permanent easement as hereinbefore described the sum of Four Hundred (400) Dollars, together with costs amounting to Thirty-three dollars and ten cents and that execution issue therefor." From the final decree the plaintiff appealed to this court. The defendant filed no appeal to the ruling "that defendant was a licensee," or to the ruling that "The letter of September 8, 1923, was notice to the defendant that it could no longer occupy under the license; . . . [and] was a demand for rent in no specified amount." We shall consider the appeal on the footing of these rulings.

The rulings that the defendant was a licensee and that the letter of September 8, 1923, was notice that it could no longer occupy the locus under its license were fully warranted by the facts found by the master. Licenses to do a particular act or a series of acts on the land of another do not in any degree trench upon the policy of the law which requires that bargains respecting the title or interest in real estate shall be by deed or in writing. They amount to nothing more than an excuse for the act which would otherwise be a trespass. A permanent right to hold another's land for a particular purpose and to enter upon it at all times without his consent is an important interest. *Cook* v. *Stearns*, 11 Mass. 533, 538.

The occupation of the locus by the defendant after its license was revoked on September 8, 1923, was illegal and a continuous trespass. The ruling that it would be inequitable to grant mandatory relief to the plaintiff was error, and finds no support in the facts found that the plaintiff knew of the defendant's occupation with the permission of his father at some time between 1893 and 1896, and knew of the existence of the defendant's poles and wires on the locus to the time of the plaintiff's acquisition of title in

1916.   Nor was such ruling warranted by the fact that the plaintiff from 1916 until 1923 acquiesced in the defendant's acts on his land which had the qualities of an easement or lease, or by the fact that after the lease was revoked in 1923 the plaintiff refrained from the enforcement of his legal rights until he filed the bill of complaint in 1926.   The defendant at all times must be held to have known that the instrument under which it was permitted to occupy and use the locus was a mere license which was revocable and gave it no estate or interest in the land.   It was also bound to know when it entered upon and used the locus that the license was revocable not only at the will of the owner of the property on which it is to be exercised but by his death, by alienation or demise of the land by him, and by whatever would deprive the original owner of the right to do the acts in question or give permission to others to do them. *Morse* v. *Copeland*, 2 Gray, 302.   *Whittemore* v. *New York, New Haven, & Hartford Railroad*, 174 Mass. 363.   *Home Investment Co.* v. *Iovieno*, 243 Mass. 121.

The cases of *New York City* v. *Pine*, 185 U. S. 93, and of *Essex* v. *New England Telegraph Co.* 239 U. S. 313, especially relied upon by the defendant in support of its proposition that in this case a mandatory injunction should not issue but the bill be retained for the assessment of damages, are not applicable in their facts to the case here presented.   Each of them presented facts which in the first case established that a municipality had undertaken a large work with a view of supplying many of its citizens with one of the necessities of life; that for two years the work had been under way and the city had expended large sums of money; that if an injunction issued the city must pay whatever the plaintiff saw fit to demand, however extortionate that demand might be, or else abandon the work and lose the money it had expended; and,held that the court would not put the plaintiffs in a position to enforce an extortionate demand.   In the second case "With full knowledge of all circumstances, the town authorities permitted the location and construction of lines along the highways, and for more than twenty years acquiesced in

their maintenance and operation. The company has expended large sums of money and perfected a great instrumentality of interstate and foreign commerce, in the continued operation of which both the general public and the Government have an important interest. Under similar circumstances it has been determined, upon broad principles of equity, that an owner of land, occupied by a railroad without his previous consent, will be regarded as having acquiesced therein and be estopped from maintaining either trespass or ejectment (*Roberts* v. *Northern Pacific R. R. Co.*, 158 U. S. 1, 11; *Northern Pacific R. R. Co.* v. *Smith*, 171 U. S. 260, 271, 275); and like reasons may demand similar protection to the possession of a telegraph company. A municipal corporation, under exceptional circumstances, may be held to have waived its rights or to have estopped itself." (Page 321.) These cases and many similar cases cited by the defendant turn upon the application of the ancient maxim that he who seeks equity must do equity, but they do not justify the conclusion that under their application one man is at liberty to wrong another upon payment of damages.

In the case here the plaintiff's delay in instituting his suit was not likely to result to the defendant's disadvantage in acquiring an alternative route more easily and more cheaply. Nor was the ruling justified by the fact that the amount of damage to the plaintiff by the defendant's retention of a permanent easement as described in the interlocutory decree of April 3, 1929, and in the final decree of May 27, 1929, was only $400, and thus open to argument whether this amount was disproportionate to the damage of more than $5,000 which would fall upon the defendant if the mandatory injunction were granted. Where continuous trespass is alleged, irreparable damage is not essential to sustain the adjudication of a court of equity. *Hodgkins* v. *Farrington*, 150 Mass. 19, 21. *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4, 12. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448, 451, 452. *Kershishian* v. *Johnson*, 210 Mass. 135, 139. *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42, 45. *Congregation Beth Israel*

v. *Heller*, 231 Mass. 527, 529.   *Siegel* v. *Starzyk*, 238 Mass. 291, 297.   *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417, 426.   *Crosby* v. *Blomerth*, 258 Mass. 221, 226.   *Pease* v. *Parsons*, 259 Mass. 86, 88.

The decree must be reversed and the case remanded to the Superior Court to determine the time within which the defendant shall remove its poles, wires and other property and restore the plaintiff's land to a proper condition. The case is further remanded to the Superior Court to assess the plaintiff's damages, if any, recoverable from September 8, 1923.

*Decree reversed with costs.*