CABLEVISION OF BOSTON, INC.[1] *vs.* PETER SHAMATTA
& another,[2] trustees.[3]

No. 03-P-647.

Suffolk. April 9, 2004. - May 16, 2005.

Present: ARMSTRONG, C.J., DREBEN, & KANTROWITZ, JJ.

*Community Antenna Television Systems. License. Trespass. Contract,* Unjust enrichment.

In a civil action in which a Superior Court judge enjoined the defendants (apartment building owners who had revoked permission previously granted to the plaintiff cable company for the attachment of wires and equipment to the defendants' building for no stated duration) from removing the plaintiff's wires and equipment from their building, the judge properly dismissed the defendants' damages claims for the plaintiff's alleged trespass in failing immediately to remove the items upon being notified of the revocation, where the plaintiff was not a trespasser during the reasonable time it took to establish alternate circuits to ensure continuation of service to the plaintiff's customers. [524-528]

CIVIL ACTION commenced in the Superior Court Department on May 12, 2000.

A motion for a preliminary injunction was heard by *Paul A. Chernoff*, J.; motions for summary judgment were heard by *Ralph D. Gants*, J.; and entry of final judgment was ordered by *Patrick J. King*, J.

*Martin Jacobs* for the defendants.

*Cameron F. Kerry* for the plaintiff.

ARMSTRONG, C.J. In 1985, the Shamattas gave Cablevision of Boston, Inc. (Cablevision), which was then constructing its network of circuits in the South End section of Boston, written

---

[1]During the course of this litigation, Cablevision of Boston, Inc., was renamed Cablevision of Wappingers Falls, Inc.

[2]Elias Shamatta.

[3]Of the 672 Tremont Street Trust.

permission to attach wires and equipment to the back of their apartment building at 627 Tremont Street. Those wires and equipment became the conduit for service availability to roughly 400 residential units, some at the Shamattas' apartment building, but most in the surrounding neighborhood. On April 5, 2000, the Shamattas notified Cablevision that they were revoking the permission given in 1985 (except for such wiring as was needed to service the Shamattas' own apartment units[4]), and on May 5 sent a follow-up letter warning that if Cablevision failed to remove its wires and cable boxes by May 12, the Shamattas would do so themselves.

This litigation ensued. Cablevision filed a complaint seeking damages for breach of contract and for other alleged wrongs, and injunctive relief to block the Shamattas' removal of the wires and equipment. After a hearing, a Superior Court judge, while assuming that Cablevision's rights were only those of a licensee, and hence revocable, granted a "time restricted preliminary injunction" barring the Shamattas from removing the wires and attachments before January 1, 2001.[5] Just before that date (as Cablevision would have it) or on January 8, 2001 (as the Shamattas claim), the boxes and wires were removed, leaving for disposition a miscellany of damage claims that were disposed of by summary judgment, which concluded that the Shamattas were in breach of contract, but awarded no damages, and dismissed all other claims and counterclaims.[6]

Two points only are argued and thus concern us in this appeal by the Shamattas: first their entitlement on their counter-

---

[4]General Laws c. 166A, § 22, requires a landlord to cooperate in installing cable facilities in the landlord's own building if one or more tenants or occupants intend to subscribe. The landlord may be entitled to damages as for a land taking. See *Waltham Tele-Communications* v. *O'Brien*, 403 Mass. 747, 749 n.6 (1989), and cases cited.

[5]The judge wrote: "It would grate against principles of Equity for the Court to permit immediate removal of the cable boxes as that would effectively extinguish cable service for approximately 200 cable customers who are in no way privy to the dispute between the [parties] . . . . [G]ranting of relief leaves the [Shamattas] in a status quo position with no tangible prejudice that can not be addressed by money damages in the future. . . ."

[6]The judge's theory was that there was breach of the covenant of good faith and fair dealing, and no damages were awarded because the wires were removed in the reasonable period of time specified by the injunction.

claim to trespass damages for the period between April 5, 2000, and the date of the removal of the attachments; and, second, their entitlement to unjust enrichment damages measured by the profits Cablevision allegedly realized from having roughly 200 customers serviced through the Shamatta lines during that period and the profit it made from having those customers in service on January 1, 2001, when it was to sell its service equipment and contracts to AT&T Corporation (AT&T).

The Shamattas argue that Cablevision was a trespasser upon their property from the date they gave notice that they were revoking the 1985 permission to maintain wires and equipment on their apartment building. There can be little doubt that the permission given to Cablevision in 1985 was a license only. The language of the written permission does not suggest that Cablevision was acquiring thereby an interest in the real estate, only a privilege to attach wires and equipment to the rear wall of the apartment building, analogous to the billboards or signs in *Lowell* v. *Strahan*, 145 Mass. 1, 12 (1887), *Jones* v. *Donnelly*, 221 Mass. 213, 217-218 (1915), and *Gaertner* v. *Donnelly*, 296 Mass. 260, 261-262 (1936). The permission had no stated time limit, and there was no stated consideration. Contrast the time-limited agreement in *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54, 57 (1938), that called for an annual rent payment and was held to establish an easement in gross. The writing here gave Cablevision no interest in the Shamattas' real estate, but a license only.

"[I]t is of the essence of a license that it is revocable at the will of the possessor of the land." *Id.* at 56. If the license permitted placing the licensee's chattels on the real estate, however, the revocation does not instantly change the status of a licensee to that of trespasser. The licensee has the right to remove his chattels and to go on the land or in the building for a reasonable time following revocation of the license for the purpose of removing the chattels. *Ibid.*, and cases cited. See Restatement (Second) of Torts § 177 (1965).[7] Where, as here, the license contemplated the presence of Cablevision's wires and boxes on

[7]Section 177 provides as follows: "If the possessor consents to the presence on the land of a thing which is to be removed at some time thereafter, and if such consent is terminated or suspended, one entitled to the immediate posses-

the Shamattas' building, the continuing presence of the wires and equipment could not constitute a trespass until a reasonable time had passed for their removal. *McNeal* v. *Emerson*, 15 Gray 384, 385-386 (1860). *Drake* v. *Wells*, 11 Allen 141, 142-143 (1865). See *Steiger* v. *Burroughs*, 878 P.2d 131, 135-136 (Colo. Ct. App. 1994).

If the parties cannot reach agreement as to how much time is reasonable to effect removal, the question what constitutes a reasonable time is normally treated as one for the finder of fact. Compare *Orr* v. *Keith*, 245 Mass. 35, 39 (1923); *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 158 (1978), *S.C.*, 376 Mass. 757 (1978). Compare also *Flagship Cruises, Ltd.* v. *New England Merchants Natl. Bank*, 569 F.2d 699, 702 (1st Cir. 1978). What is reasonable depends in part on the nature of the chattels to be removed and the difficulty of effecting removal without unnecessary destruction. Contrast, for example, the removal of a load of cut wood, described in *Drake* v. *Wells*, *supra*, or reclaiming a heifer, as in *Smith* v. *Hale*, 158 Mass. 178 (1893), with the removal of a historic house from one site to another, involving complicated structural and mechanical calculations, coordination of multiple specialized services, and the procurement of various licenses for passage of the house on public ways. See *Steiger* v. *Burroughs*, *supra* (four months to remove 1,800-square-foot house).

Here the judge correctly regarded the wires and transmission equipment of Cablevision not simply as gadgets that could be quickly ripped from the wall and wires that could be snipped, but as part of an interlocked system that should not be destroyed without reasonable efforts to avoid interruption of service to hundreds of households. He properly fixed a reasonable period of time, taking into account the establishment of alternate transmission lines and securing the licenses and permits necessary for their construction. See Restatement (Second) of Torts § 177 comment e.

No argument is made that the time the judge fixed — seven

---

sion of the thing is privileged, as against such possessor and his transferee, to be on the land at a reasonable time for the purpose of removing the thing in a reasonable manner and with reasonable promptness, unless he knows or has reason to know the time of such termination or suspension a reasonable period in advance."

months — was not reasonable for that work, based on the affidavits and representations of counsel before him.[8] Rather, the Shamattas' contention is only that Cablevision was a trespasser from the date of the Shamattas' original letter of revocation on April 5, 2000, and that Cablevision, as a wrongdoer from that time until year's end, should be made to pay to the Shamattas, as damages for its unjust enrichment, the earnings from its cable service to the 200 customers served by use of the Shamatta circuits, plus the penalty Cablevision avoided in its deal with AT&T by having retained the 200 households as customers-in-service on January 1, 2001.

The Shamattas' claims for damages fail because Cablevision was not a trespasser on their property during the reasonable time it took to establish the alternate circuits to ensure continuation of service. To rule otherwise would put licensees at risk of extortionate demands occasioned by opportunistic or bad faith revocations, a result warned against by decisions such as *Giles* v. *Simonds*, 15 Gray 441, 443 (1860), and *Drake* v. *Wells*, 11 Allen at 143; and whether that principle is phrased as an "implied irrevocable license," see *ibid.*, and *Smith* v. *Hale*, 158 Mass. at 183, or as a breach of an implied duty of good faith and fair dealing,[9] as the judge who ruled on summary judgment did, does not affect the result. Cablevision must be allowed a reasonable period of time to establish new circuitry before removal of the old and should not be required to pay damages during that reasonable period.[10] See *Steiger* v. *Burroughs*, 878 P.2d at 135-136. There being no argument that the time fixed by

---

[8]The Shamattas do argue that the ten days they allowed Cablevision in their letter of April 5, 2000, was more than a reasonable time, as evidenced by the fact that the workmen who effected the removal in early January, 2001, took less than half a day for the job. The contention misses the point: the measure of reasonable time must include the construction of alternate circuits prior to the physical removal of the excess wires and equipment attached to the Shamattas' building.

[9]Because there was only a license, not a contract, the implied duty of good faith and dealing could seemingly be relevant only by way of analogy.

[10]Even if the Shamattas could have shown trespass as of April 5, 2000, their theory of damages, disgorgement of all of Cablevision's profits and unincurred penalties, encounters serious problems in the authorities. See Restatement of Restitution § 129 illus. 1 (1936) (victim of trespass to land not entitled to disgorgement of profits, only reasonable rental value of use). But see 1 Palmer, Restitution §§ 2.5, 2.12 (1978) (suggesting that where

the judge to do that job exceeded a reasonable period (see note 8, *supra*), the Shamattas' counterclaims were properly dismissed.[11]

We recognize that in a case bearing some factual similarities to this one, *Nelson* v. *American Tel. & Tel. Co.*, 270 Mass. 471 (1930), the telephone company's occupation of Nelson's farm by maintaining a line of poles and wires for years following notice of revocation was said to be an "illegal and continuous trespass," and the company was made (in addition to removing the poles) to pay trespass damages from the date of revocation. There are two important differences between that case and this one. First, the issue in that case was only whether the judge had discretion to deny Nelson a mandatory injunction compelling removal, due to the disproportion between the expense to the company of removal and the relatively minuscule damages to Nelson's farm caused by the poles. Second, the telephone company made no effort to remove its poles and wires or to prove the time that would be reasonable for effecting removal, arguing only that it should not be required to do so. Here Cablevision did set to that task and effected removal within or only slightly beyond the reasonable time fixed by the judge for that work.[12] Cablevision was not a trespasser during that reasonable period.

*Judgment affirmed.*

reasonable rental value cannot be ascertained, recovery of profits minus defendant's contribution to their creation may be appropriate).

[11] Judgment was entered on the parties' cross motions for summary judgment. It could be argued that a material issue of fact remained in dispute: whether removal of the wires was effected by January 1, 2001, the end of the reasonable time fixed by the judge, or not until January 8, 2001, as the Shamattas contend. The measure of damages for a trespass during that seven-day period would be the difference in the rental value of the Shamattas' apartments with and without the removed wires and equipment. See *Belkus* v. *Brockton*, 282 Mass. 285, 288 (1933); *Fenton* v. *Quaboag Country Club, Inc.*, 353 Mass. 534, 539 (1968). Such damages could not be more than nominal and would not warrant remand of the case for further proceedings. Particularly is this true when it is recalled that Cablevision was to remove only some, not all, of the attached wires and equipment. See note 4, *supra*.

[12] It is worth noting that the trial court in *Nelson* was ordered on remand to determine a reasonable time for the telephone company to remove its poles and restore Nelson's land. *Id.* at 482. Nothing was said of whether damages were to be assessed during that period, the point that would be of direct relevance to the present case.